# *NAYDENSKIY LAW GROUP, P.C.*

*1517 Voorhies Ave, 2nd Fl., Brooklyn NY 11235, Naydenskiylaw@gmail.com, (718) 808-2224*

**BY ECF**

August 8, 2017

**Honorable Judge Vera M. Scanlon**
**United States District Court**
**Eastern District of New York**
**225 Cadman Plaza East**
**Brooklyn, NY 11201**

**Re: *Moses v. United Parcel Services, Inc.* 16-cv-6331**

**Dear Honorable Judge Scanlon:**

## MOTION FOR SETTLEMENT APPROVAL

Dear Honorable Judge Scanlon,

We represent Plaintiffs Latoya Moses and Albert Morales ("Plaintiffs")[1] in the above-referenced action. We write to respectfully request judicial approval of the parties' proposed settlement agreements, attached hereto as Exhibit "A"[2]. The agreements provide payment of $2,700 to Plaintiff Moses, $2,500 to Plaintiff Morales, and $14,800 to Plaintiffs' counsel for attorney fees and costs which were negotiated separately from the Plaintiffs' recovery. For the reasons outlined below, Plaintiffs submit that the Court's approval is warranted.

### I.    BACKGROUND

Plaintiff Moses filed a Complaint on November 15, 2016. The parties appeared for an initial conference in front of Your Honor on February 13, 2017 wherein Your Honor expressed her concern that the Motor Carrier Exemption to the FLSA may apply in this case[3]. Plaintiffs filed a Second Amended Complaint on March 2, 2017. Subsequently, Defendants answered on March 23, 2017. The parties exchanged document discovery and Defendant deposed both

---

[1] In accordance with Your Honor's July 14, 2017 Order, the Plaintiffs advised that they are available tomorrow Wednesday August 9, 2017 between 4pm and 5pm if convenient for Your Honor (Plaintiff Moses only receives her schedule the following week on Fridays).

[2] Defendant will submit its signed agreement upon The Court's approval of the settlement.

[3] Plaintiffs alleged that driver helpers were not reimbursed for time prior to being clocked in or for time after being clocked out. However, after discovery, Plaintiff's counsel concedes that driver helpers are not entitled to be compensated for this time.

Plaintiffs. Thereafter, the parties engaged in settlement discussions and agreed to settle Plaintiffs' claims.

## II.      CLAIMS AND DEFENSES

### A.  Plaintiff Morales

In his deposition, Plaintiff Morales testified that during one week of his tenure with Defendant, he was required to come into the facility first. Thus, assuming Plaintiff Morales had to come to Defendants facility for 6 days times 3 hours times 10.15, Plaintiff Morales would be owed a maximum of $182.70 in wages, $182.70 in liquidated damages and $1,500 in wage statement violations. Therefore, Plaintiff Morales maximum damages would be $1,865.40.

Therefore, a settlement of $2,500 compensates Plaintiff Morales over 100% of her maximum damages owed.


### B.  Plaintiff Moses

In her deposition, Plaintiff Moses testified that during one week of her tenure with Defendant, she arrived to the Defendant's facility and worked but, was not paid for this time. Taking this allegation as true, assuming a 5 day work week, Plaintiff Moses would be owed $220 in wages for this week (5 days times 4 hours times $11 an hour).

Additionally, Plaintiff Moses alleges that Defendant violated the New York call-in pay requirement. In the records produced by Defendant, if Plaintiff were to win the maximum for this allegation, she would be entitled to 3 hours in the year 2015 and 9.53 hours in 2016. Thus, Plaintiff Moses would be owed $135.28 (3 hours times $10.15 plus 9.53 hours times $11) for her call-in pay allegations. Thus Plaintiff Moses's maximum wages owed would be $355.28, 355.28 in liquidated damages and $1,250 in wage statement violations. Therefore, Plaintiff Moses maximum damages would be $1,960.56.

Therefore, a settlement of $2,700 compensates Plaintiff Moses over 100% of her maximum damages owed.


## ATTORNEY FEES

Separately from the Plaintiffs' recovery, counsel negotiated and agreed that Defendant would pay Naydenskiy Law Group, P.C. attorney fees and costs in the amount of $14,800[4]. *See Amaro v. Barbuto, LLC*, No. 16-CV-1581 (AJN), 2017 WL 476730, at \*4 (S.D.N.Y. Feb. 2, 2017) (citing *Zamora v. One Fifty Fifty Seven Corp.,* No. 14 CIV. 8043 (AT), 2016 WL 1366653, at \*2 (S.D.N.Y. Apr. 1, 2016)) ("noting that although the proposed award was greater than Plaintiffs' recovery, the Court saw no reason to reduce the fee where Plaintiffs would receive 100% of their estimated damages, there were no opt-in plaintiffs, the case was not a collective action, and there existed no basis to presume conflict and antagonism between the plaintiff and his attorney."); *See Chapman-Green v. Icahn House W. LLC*, No. 11 CIV. 1190 MHD, 2013 WL 658245, at \*2 (S.D.N.Y. Feb. 21, 2013) (citing *Millea v. Metro–North R.R. Co.,* 658 F.3d 154, 168 (2d Cir.2011)) ("plaintiffs themselves will receive nearly 90 percent of the wages that they claim they were owed. Hence the fact that fees substantially exceed that total is of little consequence here."); *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08CV4377(KAM)(CLP), 2010 WL 2545439, at \*5

---

[4] Plaintiffs counsel's current contemporaneous time and expense records are attached as Exhibit "B".

(E.D.N.Y. May 17, 2010), report and recommendation adopted, No. 08-CV-4377 KAM CLP, 2010 WL 2545472 (E.D.N.Y. June 18, 2010) (""[T]he FLSA does not require the court to assess the fairness of an agreed payment of attorneys' fees in settling an individual action. Indeed, the purpose of the fairness review is to ensure that an employer does not take advantage of an employee in settling his claim for wages, and not to ensure that the employee does not overcharge the employer." "In an individual FLSA claim, where separate amounts are set forth for the payments of unpaid wages and payments for attorneys fees, the Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' feeIn other words, there is a greater range of reasonableness for approving attorney's fees in an individual action where the parties settled on the fee through negotiation.")

## THE SETTLEMENT SHOULD BE APPROVED

The standard for approval of FLSA settlement is well-established in the Second Circuit. As stated in the Report and Recommendation adopted by the Court in *Serebryakov v. Golden Touch Transp. of NY. Inc.*:

> When deciding whether to approve a motion for settlement of individual FLSA claims, the Court considers whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employers overreaching. In the absence of a certified class, a district court typically considers the following factors to determine whether a settlement of individual FLSA claims is reasonable: (1) the complexity, expense, and likely duration of litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation.

No. 12 Civ. 3990 (NGG)(RER), 2013 WL 3364393, at *2 (E.D.N.Y. July 2, 2013) (Garaufis, J) (citations and internal quotation marks omitted); *see also. e.g.. Calle. et al. v. Elite Specialty Coatings Plus, Inc., et al.,* No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081, at *2 (E.D.N.Y. Nov. 21, 2014) (evaluating and approving a settlement using the above factors as well as comparing the settlement amount to counsel's lodestar); *Jn re Penthouse Executive Club Comp. Litig.,* No. 10 Civ. 1145 (KMW), 2014 WL 185628, at *7 (S.D.N.Y. Jan. 14, 2014) (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353-54 (IIth Cir. 1982) ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes."); *Tiro v. Public House Investments. LLC,* Nos. 11 Civ. 7679 (CM), *et al,* 2013 WL 4830949, at *JO (S.D.N.Y. Sept. 10, 2013) (citing *Johnson v. Brennan,* No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011); *Lynn's Food Stores,* 679 F.2d at 1353-54) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement, and approve

FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes."); *Yuzmy v. HSBC USA. N.A.,* No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *7 (S.D.N.Y. Oct. 2, 2013) (citing *Lynn's Food Stores,* 679 F.2d at 1354; *McMahon v. Olivier Cheng Catering & Events. LLC,* No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010)) ("If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved."); *Diaz v. Scores Holding Co., Inc.,* No. 07 Civ. 8718 (THK), 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011) ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bonafide* disputes. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, courts will approve the settlement".) (citations omitted); *Hens v. Clientlogic Operating CmlJ.,* No. 05 Civ. 381S (WMS), 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (approving FLSA — not Rule 23 — settlement where the proposed settlement resolved contested litigation in a *bona fide* dispute, and was the product of lengthy, vigorous arm's length negotiations between experienced counsel).

Based on the above, the proposed settlement was the result of hard fought and arm's-length negotiations between experienced counsel, is fair and should be approved. *See, e.g. Calle,* 2014 WL 6621081, at *3-4 (declaring the settlement agreement fair and reasonable and approving it); *Serebryakov,* 2013 WL 3364393, at *I (adopting Magistrate Judge's Report and Recommendation to approve FLSA settlement); *Peralta v. Allied Contracting II C01p.,* No. 09 Civ. 953 (NGG)(RER), 2011 WL 3625501, at *I (E.D.N.Y. Aug. 17, 2011) (same).

Dated: August 8, 2017

Naydenskiy Law Group, P.C.
_____s/_____
Gennadiy Naydenskiy
1517 Voorhies Ave, 2nd Fl.
Brooklyn, New York 11235
(718) 808-2224
naydenskiylaw@gmail.com
*Attorney for Plaintiffs*

# EXHIBIT A

DocuSign Envelope ID: 01D2377-59E734FA3-A52B-8415698EFC44

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

United Parcel Service, Inc. (the "Company" or "UPS") and I, Albert Morales, (together, the "Parties"), agree as follows.

### RECITALS

This Agreement is made with reference to the following facts:

**WHEREAS**, I commenced litigation in the U.S. District Court for the Eastern District of New York (the "Court") captioned *LaToya Moses and Albert Morales v. United Parcel Service, Inc.*, Civil Action No. 16-cv-06331 (DLI-VMS) (the "Lawsuit"), in which I asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the New York Labor Law §§ 650, *et seq.*, arising out of alleged failure to appropriately compensate me for all hours worked per workweek, claims for allegedly failing to pay overtime and also claims for allegedly failing to pay reporting pay under the New York Labor Law;

**WHEREAS** the Lawsuit is to be dismissed without prejudice; and

**WHEREAS,** UPS denies the validity of my claims, disputes the hours that I worked, and denies that it owes me any overtime or other compensation or reporting pay or is subject to any liability; and

**WHEREAS,** the Parties agree to settle fully and finally all the claims asserted or capable of being asserted among them according to the terms set forth in this Agreement, and agree that the terms of this Agreement are fair, reasonable, and adequate; and

**WHEREAS,** the Parties have been represented by counsel since the inception of Lawsuit, and this settlement was the result of arms-length negotiation; and

**WHEREAS,** the Parties wish to settle their differences without resort to further litigation.

**NOW, THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

### Section 1 – Benefits

(a)  **In General**:  The Company promises that, within twenty (20) days after I sign this Separation Agreement and General Release ("Agreement") and return it to counsel for the Company, Jonathan L. Sulds, Esq., Greenberg Traurig, LLP, 200 MetLife Building, 200 Park Avenue, New York, New York 10166, UPS will send me the amount or benefits set forth in this section that are conditioned on my execution of this Agreement, provided that I first satisfy my obligation under Section 3(b) and 3(c) to withdraw any pending legal and administrative actions and to return all Company property. I acknowledge that the Company is not otherwise required to pay or provide me such amounts or benefits. This Agreement shall be effective upon its due execution by both Parties.

402651.9/11

INITIALS: _____

(b) **Sufficiency of Consideration**: I acknowledge and agree that the sums and benefits to be provided under the terms of the Agreement are, in significant and substantial part, in addition to those benefits to which I am otherwise entitled. I acknowledge that the Company has -- apart from this Agreement -- paid me for all wages and unused accrued vacation benefits that the Company concedes were due me.

(c) **Consideration**: In exchange for the promises and releases contained in this Agreement, UPS will issue the following payments and consideration:

(i) One check payable to me in the gross amount of Twenty Five Hundred Dollars and Zero Cents ($2,500.00), less all required local, state and federal tax deductions, which represents settlement of any claim I may have for wage-based compensatory damages or compensation including without limitation all those claims alleged or which could have been alleged in the Lawsuit. The Company will report this payment on IRS Form W-2. The portion of attorney's fees allocable to wage-related claims will be reported on IRS form W-2, but will not be subject to any tax withholding or deduction by UPS.

(ii) One check payable to the Naydenskiy Law Group, P.C. in the amount of Seven Thousand Seven Hundred and Fifty Dollars and Zero Cents ($7,750.00), representing my attorneys' fees and costs. These attorneys' fees and costs will be reported on an IRS form 1099 issued to the Naydenskiy Law Group, P.C., but will not be subject to any tax withholding by UPS. I acknowledge and agree that neither party is a prevailing party for any purposes and that UPS owes no amounts for attorneys fees except those set forth here.

(d) **Compensation and Benefit Plans**: I am not eligible to participate in and have no rights under any applicable stock option, bonus, incentive compensation, commission, medical, dental, life insurance, retirement, and other compensation or benefit plans of the Company at any time in the future.

Section 2 – **Complete Release**

(a) **In General**: In exchange for the Company's promises contained in this Agreement, I agree to irrevocably and unconditionally release any and all Claims I may now have against the Company and other parties as set forth in this Section 2 (the "Release").

(b) **Released Parties**: The Released Parties are the Company, all related companies, partnerships, or joint ventures, employee benefit plans of the Company and, with respect to each of them, their predecessors and successors; and, with respect to each such entity, all of its past and present employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), in their respective capacity as such, and any other persons acting by, through, under or in concert with any of the persons or entities listed in this subsection, in their respective capacity as such.

(c) **Claims Released**: I understand and agree that I am releasing (*i.e.*, giving up) all known and unknown claims, promises, causes of action, or similar rights of any type that I may presently have (the "Claims") against any Released Party, except as provided in Section 2(e) below. For example, I am releasing all common law contract, tort or other claims I might have, as well as claims I might have under the Age Discrimination in Employment Act (ADEA), the WARN Act, Title VII of the Civil Rights Act of 1964, Sections 1981 and 1983 of the Civil Rights Act of 1866, the Americans With Disabilities Act (ADA), the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (FLSA), the New York Labor Law (NYLL), the New York State Human Rights Law, New York

402651.9/11

INITIALS: _____

2 of 7

Executive Law; New York Wage Theft Prevention Act; New York Minimum Wage Act and all other federal, state or local laws, statutes, regulations, ordinances, or orders, and all claims under any federal or state Constitution to the extent such release is permitted by law.

(d) **Unknown Claims**: I understand that I am releasing Claims that I may not know about. That is my knowing and voluntary intent, even though I recognize that someday I might learn that some or all of the facts I currently believe to be true are untrue and even though I might then regret having signed this Release. Nevertheless, I am assuming that risk and I agree that this Agreement shall remain effective in all respects in any such case. I expressly waive all rights I might have under any law that is intended to protect me from waiving unknown claims. I understand the significance of doing so.

(e) **Claims Not Released**: I understand and agree that this Release does not release any claims that the law does not permit me to release. I further understand and agree that I am not releasing any claim that relates to: (i) my right to enforce this Agreement; (ii) my right, if any, to claim government-provided unemployment benefits; (iii) the rights if any I retain pursuant to Section 1(d), above; (iv) my right to file a timely administrative charge with the Equal Employment Opportunity Commission (EEOC) regarding the validity of this Agreement or with the EEOC or any similar agency regarding any claim of employment discrimination; (v) filing a timely charge or complaint with the Securities and Exchange Commission (SEC) or providing information or participating in any investigation regarding alleged securities fraud; or (vi) any rights or claims which may arise or accrue after I sign this Agreement. I understand, however, that I am waiving any right to personal recovery or personal injunctive relief in connection with any charge or complaint referenced in subparts (iv) and (v) above, except for any award for which I may be eligible, that cannot be waived by agreement, as a result of reporting alleged securities fraud. In the event that I file or am included in any administrative charge or investigation, or become a member of a class after the effective date of this Agreement, I agree to waive any right to monetary recovery should any administrative or governmental agency (such as the EEOC, the National Labor Relations Board, the SEC, or any state or local agency), or any other person or entity, pursue any claims on my behalf against the persons or entities covered by the release in this Agreement.

(f) **Protected Rights**:  I understand that nothing contained in the Release, or in any other provision of this Agreement, limits my ability to file any claim or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board or any other federal, state or local governmental agency or commission ("Government Agencies"). I further understand that this Agreement does not limit my ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agencies in connection with any change or complaint, whether filed by me, or on my behalf, or by any individual. However, I understand that I am releasing my right to recover monetary damages or obtain other relief that is personal to me in connection with any charge or complain that may be filed with any Government Agencies relating to my employment with the Company. I additionally understand and agree that if I make a confidential disclosure of a Company Trade Secret or other Confidential Information to a government official or an attorney for the sole purpose of reporting or investigating a suspected violation of law, or in a court filing under seal, I shall not be held liable under this Agreement or under any federal or state trade secret law for such disclosure.

**Section 3 – <u>Promises</u>**

(a) **Employment Termination**: I agree that my employment with the Company and its affiliates ended on January 9, 2017. I understand and agree that I am no longer authorized to incur any expenses,

INITIALS: _____

DocuSign Envelope ID: 01D2377-58F734FA3-A52B-8415699EEC44

liabilities, or obligations on behalf of the Company. I agree to waive and release any right to employment, reinstatement, or re-employment with the Company, and agree that the Company will not employ, reinstate, or re-employ me. I further agree that I will not at any time in the future apply for or accept employment with the Company or any of its parent, subsidiary, or affiliated entities. If I breach this provision, I understand my application will be rejected. However, in the event that I become employed by the Company or any of its parent, subsidiary, or affiliated entities as an employee, consultant, independent contractor, or otherwise, I understand I will be subject to summary dismissal or discharge without any resulting tort, contract or other liability to the Company or any of its parent, subsidiary, or affiliated entities.

(b)  **Promise Not to Litigate Released Claims**: Except as specifically identified below, I have not filed or caused to be filed any lawsuit, complaint, or charge with respect to any Claim this Agreement purports to release. I promise never to pursue any Claim that I have released by signing this Agreement and Release, whether by means of a lawsuit, arbitration, or otherwise, and whether as a named plaintiff, class member, or otherwise. I will promptly dismiss with prejudice or withdraw from any such action that is currently pending or which may be filed at any time in the future. However, this Release does not require me to withdraw, or prohibit me from filing a charge with or providing information to any government administrative agency (such as the EEOC or SEC) as long as I do not personally seek any reinstatement, damages, remedies, or other relief for myself personally as to any Claim that I have released, any right to which I hereby waive, except for any award for which I may be eligible as a result of reporting alleged securities fraud which cannot be waived by agreement. This subsection shall not prohibit me from challenging the validity of the ADEA Claim release in Section 2(c) of this Agreement.  I agree to use my best efforts to cause the withdrawal or dismissal without prejudice of the Lawsuit I filed against the Company, captioned *Moses and Morales v. UPS, Inc.*, 1:16-cv-06331 (DLI-VMS), claiming unpaid overtime and other compensation under the FLSA and NYLL including without limitation Reporting Pay under the NYLL, including but not limited to filing a Request for Dismissal of the Lawsuit and submitting a letter of withdrawal with prejudice to any administrative agency where I have a charge pending. I understand that until such withdrawal or dismissal is accepted or ordered, no amounts otherwise due me under this Agreement shall become payable.

(c)  **Company Property**: Before accepting any monetary payments from the Company, I promise to return to the Released Parties all files, memoranda, documents, records, electronic records, software, copies of the foregoing, credit cards, keys, and any other Released Party property in my possession.

(d)  **Taxes**: I am responsible for paying any taxes on amounts I receive because I signed this Agreement. I understand that I may be subject to higher income tax rates resulting from amounts I receive because I signed this Agreement. I agree that the Company may withhold all taxes it determines it is legally required to withhold, except as expressly otherwise provided in Section 1.

(e)  **Ownership of Claims**: I have not assigned, transferred or given away any of the Claims that I am releasing, nor have I purported to do so. I hereby acknowledge that no child support order, garnishment orders, or other orders requiring me to pay money to any other person are now in effect.

(f)  **Non-admission of Liability**: I agree not to assert that this Agreement is an admission of guilt or wrongdoing by the Company or any Released Party, and I acknowledge that the Company and the Released Parties deny that they have engaged in wrongdoing of any kind or nature.

(g)  **No Disparagement or Harm**: I agree not to criticize, denigrate, or disparage any Released Party or any one of their products, services, or practices. This sub-section is subject to the terms of

INITIALS:_____

Section 2(e) above. In addition, I understand that nothing in this Agreement prohibits or prevents me from making truthful statements about my experience litigating the lawsuit referenced in Section 3(b) above.

(h) **Implementation**: I agree to sign any documents and do anything else that is necessary in the future to implement this Agreement.

(i) **Age Representation**: I am not over age 40 at the time of signing this Agreement.

(j) **Other Representations**: I have not suffered any discrimination on account of my age, sex, race, national origin, marital status, sexual orientation, or any other protected status, and none of these ever has been an adverse factor used against me by any Released Party. I have not suffered any job-related wrongs or injuries for which I might still be entitled to compensation or relief, such as an injury for which I might receive a workers' compensation award in the future. I have properly reported all hours that I have worked and I already have been paid all wages, overtime, commissions, compensation, benefits, and other amounts that the Company or any Released Party has ever owed me, except for unpaid amounts or benefits expressly payable under the terms of this Agreement. To the best of my knowledge, all of the factual allegations I made that induced the Company to enter into this Agreement are true in all material respects.

(k) **This Agreement to be Kept Confidential**: I agree not to disclose the underlying facts that led up to this Agreement or the terms, amount, or existence of this Agreement to anyone other than a member of my immediate family, attorney, or other professional advisor and, even as to such a person, only if the person agrees to honor this confidentiality requirement. Such a person's violation of this confidentiality requirement will be treated as a violation of this Agreement by me. This subsection does not prohibit my disclosure of the terms, amount, or existence of this Agreement to the extent necessary legally to enforce this Agreement, nor does it prohibit disclosures to the extent otherwise legally required or to the SEC or any other governmental authority, where disclosure is specifically protected under applicable "whistleblower" laws and regulations including, but not limited to, those adopted under the Sarbanes-Oxley Act or Dodd–Frank Wall Street Reform and Consumer Protection Act. I acknowledge that a violation of this section would cause immeasurable and irreparable damage to the Released Parties in an amount incapable of precise determination. I therefore agree that the Company will be entitled to injunctive relief in any court of competent jurisdiction for any actual or threatened violation of this section, in addition to other available remedies.

The Parties agree that the terms of this section are a material inducement for the execution of this Agreement. Any disclosure or dissemination, other than that described above, will be regarded as a breach of this Agreement, and a cause of action shall immediately accrue for damages and injunctive relief. The Parties agree that damages sustained by such breach would be impractical or extremely difficult to determine and, therefore, agree that in the event that I violate this Section (k), I shall pay the Company liquidated damages in the sum of FIVE HUNDRED DOLLARS AND 00/100 CENTS ($500) for each violation. The Parties further agree that such damages are not intended to be, and shall not be construed as, a penalty.

(l) **Confidential Information**: I hereby acknowledge that during the course of my employment, I gained knowledge or information of a confidential nature in which the Released Parties have a proprietary interest.  I agree not to disclose to any person or any entity any confidential, proprietary or trade secret information of or about any Released Party without the express written authorization and consent of the Company. Nothing in this Agreement, including this Section (l), is intended to limit me from disclosing information to the SEC or any other governmental authority, where disclosure is specifically protected

402651.9/11

INITIALS: _____

DocuSign Envelope ID: 914D2377E9E3-4FA9-A52B-841F6999EEC4A

under applicable "whistleblower" laws and regulations including, but not limited to, those adopted under the Sarbanes-Oxley Act or Dodd–Frank Wall Street Reform and Consumer Protection Act.

### Section 4 – <u>Consequences of Violating My Promises</u>

I agree to pay the reasonable attorneys' fees and any damages Released Parties may incur as a result of my breaching a promise I made in this Agreement, or if any representation I made in this Agreement was false when made. I further agree that the Company would be irreparably harmed by any actual or threatened violation of Section 3 that involves disclosure of the existence, terms, or amount payable under this Agreement, and that the Company will be entitled to an injunction prohibiting me from committing any such violation.

### Section 5 – <u>Miscellaneous</u>

(a) **Entire Agreement and Severability**: This is the entire agreement between me and the Released Parties on the subject matter of this Agreement. This Agreement may not be modified or canceled in any manner except by a writing signed by both me and an authorized Company official. I acknowledge that the Released Parties have made no representations or promises to me, other than those in this Agreement. If any provision in this Agreement is found to be unenforceable, all other provisions will remain fully enforceable. The covenants set forth in this Agreement shall be considered and construed as separate and independent covenants. Should any part or provision of any provision of this Agreement be held invalid, void or unenforceable in any court of competent jurisdiction, such invalidity, voidness or unenforceability shall not render invalid, void or unenforceable any other part or provision of this Agreement. This Agreement may be executed in counterparts by the Parties and if so executed shall be binding upon them.

(b) **Successors**: This Agreement binds my heirs, administrators, representatives, executors, successors, and assigns, in their respective capacity as such, and will inure to the benefit of all Released Parties and their respective heirs, administrators, representatives, executors, successors, and assigns, in their respective capacity as such.

(c) **Interpretation**: This Agreement shall be construed as a whole according to its fair meaning. It shall not be construed strictly for or against me or any Released Party. Unless the context indicates otherwise, the singular or plural number shall be deemed to include the other. Captions are intended solely for convenience of reference and shall not be used in the interpretation of this Agreement. This Agreement shall be governed by the statutes and common law of the State of New York, other than any that would require the use of another jurisdiction's laws.

(d) **References**: If it is necessary for the Company to give a prospective employer a reference on me, I will direct that employer to the Company's employment verification line at 800-367-5690 or www.theworknumber.com/verifiers.Through this system, the Company agrees to give out only my employment dates and position(s) held.

### Section 6 – <u>Tender Back Provision</u>

Should I ever attempt to challenge the terms of this Agreement, attempt to obtain an order declaring this Agreement to be null and void, or institute litigation against the Company or any other Released Party based upon a Claim which is covered by the terms of the Release contained in Section 2, I will, as a condition precedent to such action, repay all amounts paid to me under the terms of this

402651.9/11

INITIALS: _____

Agreement, except I shall be permitted to retain the sum of $100, which shall serve as consideration for the non-monetary provisions of this Agreement to continue to be binding and remain in full force and effect. Furthermore, if I do not prevail in an action to challenge this Agreement, to obtain an order declaring this Agreement to be null and void, or in any action against the Company or any other Released Party based upon a Claim which is covered by the Release contained in Section 2, I shall pay to the Company and/or the appropriate Released Party all their costs and attorneys' fees incurred in their defense of my action. It is understood and agreed by me and the Company, however, that I shall not be required to repay the amounts paid to me under the terms of this Agreement or pay the Company and/or the appropriate Released Party all their costs and attorneys' fees incurred in their defense of my action (except those attorneys' fees or costs specifically authorized under federal or state law) in the event that I seek to challenge my waiver of claims under the Age Discrimination in Employment Act or Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.

> READ THIS AGREEMENT CAREFULLY AND CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS. IF YOU WISH, YOU SHOULD TAKE ADVANTAGE OF THE FULL CONSIDERATION PERIOD AFFORDED BY SECTION 5 AND YOU SHOULD CONSULT WITH AN ATTORNEY PRIOR TO EXECUTING THIS AGREEMENT.

Executed this _____ day of _6/13/2017_____, 2017.

_Albert Morales_____
DocuSigned by:
Albert Morales
D1FC90089D284A2

Executed this _____ day of _____, 2017.

_____
UNITED PARCEL SERVICE, INC.

INITIALS: _aM_____

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

United Parcel Service, Inc. (the "Company" or "UPS") and I, LaToya Moses, (together, the "Parties"), agree as follows.

## RECITALS

This Agreement is made with reference to the following facts:

**WHEREAS**, I commenced litigation in the U.S. District Court for the Eastern District of New York (the "Court") captioned *LaToya Moses and Albert Morales v. United Parcel Service, Inc.*, Civil Action No. 16-cv-06331 (DLI-VMS) (the "Lawsuit"), in which I asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the New York Labor Law §§ 650, *et seq.*, arising out of alleged failure to appropriately compensate me for all hours worked per workweek, claims for allegedly failing to pay overtime and also claims for allegedly failing to pay reporting pay under the New York Labor Law;

**WHEREAS** the Lawsuit is to be dismissed without prejudice; and

**WHEREAS,** UPS denies the validity of my claims, disputes the hours that I worked, and denies that it owes me any overtime or other compensation or reporting pay or is subject to any liability; and

**WHEREAS,** the Parties agree to settle fully and finally all the claims asserted or capable of being asserted among them according to the terms set forth in this Agreement, and agree that the terms of this Agreement are fair, reasonable, and adequate; and

**WHEREAS,** the Parties have been represented by counsel since the inception of Lawsuit, and this settlement was the result of arms-length negotiation; and

**WHEREAS,** the Parties wish to settle their differences without resort to further litigation.

**NOW, THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

### Section 1 – Benefits

(a)  **In General**:  The Company promises that, within twenty (20) days after I sign this Separation Agreement and General Release ("Agreement") and return it to counsel for the Company, Jonathan L. Sulds, Esq., Greenberg Traurig, LLP, 200 MetLife Building, 200 Park Avenue, New York, New York 10166, UPS will send me the amount or benefits set forth in this section that are conditioned on my execution of this Agreement, provided that I first satisfy my obligation under Section 3(b) and 3(c) to withdraw any pending legal and administrative actions and to return all Company property. I acknowledge that the Company is not otherwise required to pay or provide me such amounts or benefits. This Agreement shall be effective upon its due execution by both Parties.

(b)  **Sufficiency of Consideration**: I acknowledge and agree that the sums and benefits to be provided under the terms of the Agreement are, in significant and substantial part, in addition to those

benefits to which I am otherwise entitled. I acknowledge that the Company has -- apart from this Agreement -- paid me for all wages and unused accrued vacation benefits that the Company concedes were due me.

(c) **Consideration**: In exchange for the promises and releases contained in this Agreement, UPS will issue the following payments and consideration:

(i)    One check payable to me in the gross amount of Twenty Seven Hundred Dollars and Zero Cents ($2,700.00), less all required local, state and federal tax deductions, which represents settlement of any claim I may have for wage-based compensatory damages or compensation including without limitation all those claims alleged or which could have been alleged in the Lawsuit. The Company will report this payment on IRS Form W-2.  The portion of attorney's fees allocable to wage-related claims will be reported on IRS form W-2, but will not be subject to any tax withholding or deduction by UPS.

(ii)    One check payable to the Naydenskiy Law Group, P.C. in the amount of Seven Thousand Seven Hundred and Fifty Dollars and Zero Cents ($7,550.00), representing my attorneys' fees and costs. These attorneys' fees and costs will be reported on an IRS form 1099 issued to the Naydenskiy Law Group, P.C., but will not be subject to any tax withholding by UPS.  I acknowledge and agree that neither party is a prevailing party for any purposes and that UPS owes no amounts for attorneys fees except those set forth here.

(d) **Compensation and Benefit Plans**: I am not eligible to participate in and have no rights under any applicable stock option, bonus, incentive compensation, commission, medical, dental, life insurance, retirement, and other compensation or benefit plans of the Company at any time in the future.

## Section 2 – Complete Release

(a) **In General**: In exchange for the Company's promises contained in this Agreement, I agree to irrevocably and unconditionally release any and all Claims I may now have against the Company and other parties as set forth in this Section 2 (the "Release").

(b)    **Released Parties**: The Released Parties are the Company, all related companies, partnerships, or joint ventures, employee benefit plans of the Company and, with respect to each of them, their predecessors and successors; and, with respect to each such entity, all of its past and present employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs), in their respective capacity as such, and any other persons acting by, through, under or in concert with any of the persons or entities listed in this subsection, in their respective capacity as such.

(c)    **Claims Released**: I understand and agree that I am releasing (*i.e.*, giving up) all known and unknown claims, promises, causes of action, or similar rights of any type that I may presently have (the "Claims") against any Released Party, except as provided in Section 2(e) below. For example, I am releasing all common law contract, tort or other claims I might have, as well as claims I might have under the Age Discrimination in Employment Act (ADEA), the WARN Act, Title VII of the Civil Rights Act of 1964, Sections 1981 and 1983 of the Civil Rights Act of 1866, the Americans With Disabilities Act (ADA), the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (FLSA), the New York Labor Law (NYLL), the New York State Human Rights Law, New York Executive Law; New York Wage Theft Prevention Act; New York Minimum Wage Act and all other

INITIALS: _____

federal, state or local laws, statutes, regulations, ordinances, or orders, and all claims under any federal or state Constitution to the extent such release is permitted by law.

(d) **Unknown Claims**: I understand that I am releasing Claims that I may not know about. That is my knowing and voluntary intent, even though I recognize that someday I might learn that some or all of the facts I currently believe to be true are untrue and even though I might then regret having signed this Release. Nevertheless, I am assuming that risk and I agree that this Agreement shall remain effective in all respects in any such case. I expressly waive all rights I might have under any law that is intended to protect me from waiving unknown claims. I understand the significance of doing so.

(e) **Claims Not Released**: I understand and agree that this Release does not release any claims that the law does not permit me to release. I further understand and agree that I am not releasing any claim that relates to: (i) my right to enforce this Agreement; (ii) my right, if any, to claim government-provided unemployment benefits; (iii) the rights if any I retain pursuant to Section 1(d), above; (iv) my right to file a timely administrative charge with the Equal Employment Opportunity Commission (EEOC) regarding the validity of this Agreement or with the EEOC or any similar agency regarding any claim of employment discrimination; (v) filing a timely charge or complaint with the Securities and Exchange Commission (SEC) or providing information or participating in any investigation regarding alleged securities fraud; or (vi) any rights or claims which may arise or accrue after I sign this Agreement. I understand, however, that I am waiving any right to personal recovery or personal injunctive relief in connection with any charge or complaint referenced in subparts (iv) and (v) above, except for any award for which I may be eligible, that cannot be waived by agreement, as a result of reporting alleged securities fraud. In the event that I file or am included in any administrative charge or investigation, or become a member of a class after the effective date of this Agreement, I agree to waive any right to monetary recovery should any administrative or governmental agency (such as the EEOC, the National Labor Relations Board, the SEC, or any state or local agency), or any other person or entity, pursue any claims on my behalf against the persons or entities covered by the release in this Agreement.

(f) **Protected Rights**:  I understand that nothing contained in the Release, or in any other provision of this Agreement, limits my ability to file any claim or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board or any other federal, state or local governmental agency or commission ("Government Agencies"). I further understand that this Agreement does not limit my ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agencies in connection with any change or complaint, whether filed by me, or on my behalf, or by any individual. However, I understand that I am releasing my right to recover monetary damages or obtain other relief that is personal to me in connection with any charge or complain that may be filed with any Government Agencies relating to my employment with the Company. I additionally understand and agree that if I make a confidential disclosure of a Company Trade Secret or other Confidential Information to a government official or an attorney for the sole purpose of reporting or investigating a suspected violation of law, or in a court filing under seal, I shall not be held liable under this Agreement or under any federal or state trade secret law for such disclosure.

### Section 3 – <u>Promises</u>

(a) **Employment Termination**: I agree that my employment with the Company and its affiliates ended on January 11, 2017. I understand and agree that I am no longer authorized to incur any expenses, liabilities, or obligations on behalf of the Company. I agree to waive and release any right to employment, reinstatement, or re-employment with the Company, and agree that the Company will not employ,

402651.9/11

INITIALS: _____

_____

reinstate, or re-employ me. I further agree that I will not at any time in the future apply for or accept employment with the Company or any of its parent, subsidiary, or affiliated entities. If I breach this provision, I understand my application will be rejected. However, in the event that I become employed by the Company or any of its parent, subsidiary, or affiliated entities as an employee, consultant, independent contractor, or otherwise, I understand I will be subject to summary dismissal or discharge without any resulting tort, contract or other liability to the Company or any of its parent, subsidiary, or affiliated entities.

(b) **Promise Not to Litigate Released Claims**: Except as specifically identified below, I have not filed or caused to be filed any lawsuit, complaint, or charge with respect to any Claim this Agreement purports to release. I promise never to pursue any Claim that I have released by signing this Agreement and Release, whether by means of a lawsuit, arbitration, or otherwise, and whether as a named plaintiff, class member, or otherwise. I will promptly dismiss with prejudice or withdraw from any such action that is currently pending or which may be filed at any time in the future. However, this Release does not require me to withdraw, or prohibit me from filing a charge with or providing information to any government administrative agency (such as the EEOC or SEC) as long as I do not personally seek any reinstatement, damages, remedies, or other relief for myself personally as to any Claim that I have released, any right to which I hereby waive, except for any award for which I may be eligible as a result of reporting alleged securities fraud which cannot be waived by agreement. This subsection shall not prohibit me from challenging the validity of the ADEA Claim release in Section 2(c) of this Agreement. I agree to use my best efforts to cause the withdrawal or dismissal without prejudice of the Lawsuit I filed against the Company, captioned *Moses and Morales v. UPS, Inc.*, 1:16-cv-06331 (DLI-VMS), claiming unpaid overtime and other compensation under the FLSA and NYLL including without limitation Reporting Pay under the NYLL, including but not limited to filing a Request for Dismissal of the Lawsuit and submitting a letter of withdrawal with prejudice to any administrative agency where I have a charge pending. I understand that until such withdrawal or dismissal is accepted or ordered, no amounts otherwise due me under this Agreement shall become payable.

(c) **Company Property**: Before accepting any monetary payments from the Company, I promise to return to the Released Parties all files, memoranda, documents, records, electronic records, software, copies of the foregoing, credit cards, keys, and any other Released Party property in my possession.

(d) **Taxes**: I am responsible for paying any taxes on amounts I receive because I signed this Agreement. I understand that I may be subject to higher income tax rates resulting from amounts I receive because I signed this Agreement. I agree that the Company may withhold all taxes it determines it is legally required to withhold, except as expressly otherwise provided in Section 1.

(e) **Ownership of Claims**: I have not assigned, transferred or given away any of the Claims that I am releasing, nor have I purported to do so. I hereby acknowledge that no child support order, garnishment orders, or other orders requiring me to pay money to any other person are now in effect.

(f) **Non-admission of Liability**: I agree not to assert that this Agreement is an admission of guilt or wrongdoing by the Company or any Released Party, and I acknowledge that the Company and the Released Parties deny that they have engaged in wrongdoing of any kind or nature.

(g) **No Disparagement or Harm**: I agree not to criticize, denigrate, or disparage any Released Party or any one of their products, services, or practices. This sub-section is subject to the terms of Section 2(e) above. In addition, I understand that nothing in this Agreement prohibits or prevents me from making truthful statements about my experience litigating the lawsuit referenced in Section 3(b) above.

INITIALS:

(h) **Implementation**: I agree to sign any documents and do anything else that is necessary in the future to implement this Agreement.

(i) **Age Representation**: I am not over age 40 at the time of signing this Agreement.

(j) **Other Representations**: I have not suffered any discrimination on account of my age, sex, race, national origin, marital status, sexual orientation, or any other protected status, and none of these ever has been an adverse factor used against me by any Released Party. I have not suffered any job-related wrongs or injuries for which I might still be entitled to compensation or relief, such as an injury for which I might receive a workers' compensation award in the future. I have properly reported all hours that I have worked and I already have been paid all wages, overtime, commissions, compensation, benefits, and other amounts that the Company or any Released Party has ever owed me, except for unpaid amounts or benefits expressly payable under the terms of this Agreement. To the best of my knowledge, all of the factual allegations I made that induced the Company to enter into this Agreement are true in all material respects.

(k) **This Agreement to be Kept Confidential**: I agree not to disclose the underlying facts that led up to this Agreement or the terms, amount, or existence of this Agreement to anyone other than a member of my immediate family, attorney, or other professional advisor and, even as to such a person, only if the person agrees to honor this confidentiality requirement. Such a person's violation of this confidentiality requirement will be treated as a violation of this Agreement by me. This subsection does not prohibit my disclosure of the terms, amount, or existence of this Agreement to the extent necessary legally to enforce this Agreement, nor does it prohibit disclosures to the extent otherwise legally required or to the SEC or any other governmental authority, where disclosure is specifically protected under applicable "whistleblower" laws and regulations including, but not limited to, those adopted under the Sarbanes-Oxley Act or Dodd–Frank Wall Street Reform and Consumer Protection Act. I acknowledge that a violation of this section would cause immeasurable and irreparable damage to the Released Parties in an amount incapable of precise determination. I therefore agree that the Company will be entitled to injunctive relief in any court of competent jurisdiction for any actual or threatened violation of this section, in addition to other available remedies.

The Parties agree that the terms of this section are a material inducement for the execution of this Agreement. Any disclosure or dissemination, other than that described above, will be regarded as a breach of this Agreement, and a cause of action shall immediately accrue for damages and injunctive relief. The Parties agree that damages sustained by such breach would be impractical or extremely difficult to determine and, therefore, agree that in the event that I violate this Section (k), I shall pay the Company liquidated damages in the sum of FIVE HUNDRED DOLLARS AND 00/100 CENTS ($500) for each violation. The Parties further agree that such damages are not intended to be, and shall not be construed as, a penalty.

(l) **Confidential Information**: I hereby acknowledge that during the course of my employment, I gained knowledge or information of a confidential nature in which the Released Parties have a proprietary interest.  I agree not to disclose to any person or any entity any confidential, proprietary or trade secret information of or about any Released Party without the express written authorization and consent of the Company. Nothing in this Agreement, including this Section (l), is intended to limit me from disclosing information to the SEC or any other governmental authority, where disclosure is specifically protected under applicable "whistleblower" laws and regulations including, but not limited to, those adopted under the Sarbanes-Oxley Act or Dodd–Frank Wall Street Reform and Consumer Protection Act.

INITIALS:

### Section 4 – <u>Consequences of Violating My Promises</u>

I agree to pay the reasonable attorneys' fees and any damages Released Parties may incur as a result of my breaching a promise I made in this Agreement, or if any representation I made in this Agreement was false when made. I further agree that the Company would be irreparably harmed by any actual or threatened violation of Section 3 that involves disclosure of the existence, terms, or amount payable under this Agreement, and that the Company will be entitled to an injunction prohibiting me from committing any such violation.

### Section 5 – <u>Miscellaneous</u>

(a) **Entire Agreement and Severability**: This is the entire agreement between me and the Released Parties on the subject matter of this Agreement. This Agreement may not be modified or canceled in any manner except by a writing signed by both me and an authorized Company official. I acknowledge that the Released Parties have made no representations or promises to me, other than those in this Agreement. If any provision in this Agreement is found to be unenforceable, all other provisions will remain fully enforceable. The covenants set forth in this Agreement shall be considered and construed as separate and independent covenants. Should any part or provision of any provision of this Agreement be held invalid, void or unenforceable in any court of competent jurisdiction, such invalidity, voidness or unenforceability shall not render invalid, void or unenforceable any other part or provision of this Agreement. This Agreement may be executed in counterparts by the Parties and if so executed shall be binding upon them.

(b) **Successors**: This Agreement binds my heirs, administrators, representatives, executors, successors, and assigns, in their respective capacity as such, and will inure to the benefit of all Released Parties and their respective heirs, administrators, representatives, executors, successors, and assigns, in their respective capacity as such.

(c) **Interpretation**: This Agreement shall be construed as a whole according to its fair meaning. It shall not be construed strictly for or against me or any Released Party. Unless the context indicates otherwise, the singular or plural number shall be deemed to include the other. Captions are intended solely for convenience of reference and shall not be used in the interpretation of this Agreement. This Agreement shall be governed by the statutes and common law of the State of New York, other than any that would require the use of another jurisdiction's laws.

(d) **References**: If it is necessary for the Company to give a prospective employer a reference on me, I will direct that employer to the Company's employment verification line at 800-367-5690 or www.theworknumber.com/verifiers.Through this system, the Company agrees to give out only my employment dates and position(s) held.

### Section 6 – <u>Tender Back Provision</u>

Should I ever attempt to challenge the terms of this Agreement, attempt to obtain an order declaring this Agreement to be null and void, or institute litigation against the Company or any other Released Party based upon a Claim which is covered by the terms of the Release contained in Section 2, I will, as a condition precedent to such action, repay all amounts paid to me under the terms of this Agreement, except I shall be permitted to retain the sum of $100, which shall serve as consideration for the non-monetary provisions of this Agreement to continue to be binding and remain in full force and effect. Furthermore, if I do not prevail in an action to challenge this Agreement, to obtain an order declaring this Agreement to be null and void, or in any action against the Company or any other Released

402651.9/11

INITIALS: _____

Party based upon a Claim which is covered by the Release contained in Section 2, I shall pay to the Company and/or the appropriate Released Party all their costs and attorneys' fees incurred in their defense of my action. It is understood and agreed by me and the Company, however, that I shall not be required to repay the amounts paid to me under the terms of this Agreement or pay the Company and/or the appropriate Released Party all their costs and attorneys' fees incurred in their defense of my action (except those attorneys' fees or costs specifically authorized under federal or state law) in the event that I seek to challenge my waiver of claims under the Age Discrimination in Employment Act or Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.

> READ THIS AGREEMENT CAREFULLY AND CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS. IF YOU WISH, YOU SHOULD TAKE ADVANTAGE OF THE FULL CONSIDERATION PERIOD AFFORDED BY SECTION 5 AND YOU SHOULD CONSULT WITH AN ATTORNEY PRIOR TO EXECUTING THIS AGREEMENT.

Executed this _____ day of ____8/1/2017_____, 2017.

_LaToya Moses_
DocuSigned by:
0A9B721449F845C...
LaToya Moses

Executed this _____ day of _____, 2017.

_____
UNITED PARCEL SERVICE, INC.

402651.9/11

INITIALS: _____

_____

# EXHIBIT B

**NAYDENSKIY LAW GROUP, P.C.**
**1517 Voorhies Ave, 2nd Fl.**
**Brooklyn, NY 11235**

Invoice submitted to:

UPS

| | |
|---|---|
| Invoice # | **20107** |
| Invoice Date | **08/08/2017** |
| For Services Through | 08/08/2017 |
| Terms: | **N/A** |

| **Date** | **By** | **Service Summary** | **Hours/Rate** | **Amount** |
|---|---|---|---|---|
| **In Reference To:** | | **UPS (Labor)** | | |
| 11/09/2016 | GN | *Meeting*<br>intake | 0.40 at $ 250.00/hr | $ 100.00 |
| 11/13/2016 | GN | *Draft*<br>draft complaint | 1.00 at $ 250.00/hr | $ 250.00 |
| 11/14/2016 | GN | *Draft*<br>draft complaint | 2.30 at $ 250.00/hr | $ 575.00 |
| 11/15/2016 | GN | *Documentation*<br>review and edit complaint | 1.50 at $ 250.00/hr | $ 375.00 |
| 12/20/2016 | GN | *Research*<br>research def. other cases | 0.20 at $ 250.00/hr | $ 50.00 |
| 12/29/2016 | GN | *Phone Call*<br>tel conf. w/ potential cl | 0.20 at $ 250.00/hr | $ 50.00 |
| 12/30/2016 | GN | *Phone Call*<br>tel conf. w/ cl albert | 0.10 at $ 250.00/hr | $ 25.00 |
| 01/05/2017 | GN | *Phone Call*<br>confer with co-counsel re: status and strategy | 0.50 at $ 250.00/hr | $ 125.00 |
| 01/10/2017 | GN | *Phone Call*<br>tel conf. w/ cl Albert and co counsel | 0.40 at $ 250.00/hr | $ 100.00 |
| 01/11/2017 | GN | *Documentation*<br>review/edit amended complaint | 0.40 at $ 250.00/hr | $ 100.00 |
| 01/11/2017 | GN | *Phone Call*<br>tel conf. w/ cls re: driver helper wait time | 0.20 at $ 250.00/hr | $ 50.00 |
| 01/11/2017 | GN | *Draft*<br>draft amended complaint | 1.40 at $ 250.00/hr | $ 350.00 |
| 01/11/2017 | GN | *Review*<br>review draft amended complaint | 0.60 at $ 250.00/hr | $ 150.00 |
| 01/12/2017 | GN | *Documentation*<br>edit amended complaint | 0.60 at $ 250.00/hr | $ 150.00 |
| 02/01/2017 | GN | *Phone Call*<br>tel conf. w/ cl Albert re: status update | 0.10 at $ 250.00/hr | $ 25.00 |
| 02/03/2017 | GN | *Phone Call*<br>tel conf. w/ def. atty re: scheduling order | 0.30 at $ 250.00/hr | $ 75.00 |

Naydenskiy Law Group reserves the right to seek withdrawal from the case if not paid in full within ten (10) days

| | | | | |
|---|---|---|---|---|
| 02/05/2017 | GN | *Correspondence*<br>email per diem atty | 0.20 at $ 250.00/hr | $ 50.00 |
| 02/06/2017 | GN | *Correspondence*<br>email per diem atty | 0.10 at $ 250.00/hr | $ 25.00 |
| 02/06/2017 | GN | *Correspondence*<br>email cl | 0.10 at $ 250.00/hr | $ 25.00 |
| 02/06/2017 | GN | *Draft*<br>calculate Ps damages estimate and email def atty re: damages<br>calculations scheduling order. | 0.70 at $ 250.00/hr | $ 175.00 |
| 02/07/2017 | GN | *Phone Call*<br>tel conf. w/ cl re: other e/ees | 0.20 at $ 250.00/hr | $ 50.00 |
| 02/08/2017 | GN | *Correspondence*<br>email w/ def atty | 0.10 at $ 250.00/hr | $ 25.00 |
| 02/09/2017 | GN | *Phone Call*<br>tel conf. w/ def atty re: scheduling order | 0.20 at $ 250.00/hr | $ 50.00 |
| 02/09/2017 | GN | *Other*<br>prep for ltr re: scheduling stay | 0.30 at $ 250.00/hr | $ 75.00 |
| 02/09/2017 | GN | *Review*<br>review def. discovery stay ltr | 0.10 at $ 250.00/hr | $ 25.00 |
| 02/09/2017 | GN | *Phone Call*<br>tel conf. w/ O.B. re: case and stay ltr | 0.20 at $ 250.00/hr | $ 50.00 |
| 02/09/2017 | GN | *Draft*<br>draft stip extend time to reply | 0.10 at $ 250.00/hr | $ 25.00 |
| 02/09/2017 | GN | *Documentation*<br>revise stip extend time to reply | 0.10 at $ 250.00/hr | $ 25.00 |
| 02/09/2017 | GN | *Draft*<br>draft scheduling order | 0.40 at $ 250.00/hr | $ 100.00 |
| 02/12/2017 | GN | *Correspondence*<br>email def atty re: second amended complaint | 0.10 at $ 250.00/hr | $ 25.00 |
| 02/12/2017 | GN | *Research*<br>legal research - flsa pleading standard | 1.70 at $ 250.00/hr | $ 425.00 |
| 02/12/2017 | GN | *Research*<br>legal research- typo | 0.80 at $ 250.00/hr | $ 200.00 |
| 02/13/2017 | GN | *Travel*<br>travel to court- initial conf. (.8 billed at 1/2 time) | 0.40 at $ 250.00/hr | $ 100.00 |
| 02/13/2017 | GN | *Court Time*<br>Court | 0.70 at $ 250.00/hr | $ 175.00 |
| 02/13/2017 | GN | *Travel*<br>travel from court (.8 billed at 1/2 time) | 0.40 at $ 250.00/hr | $ 100.00 |
| 02/13/2017 | GN | *Draft*<br>draft second amended complaint | 0.60 at $ 250.00/hr | $ 150.00 |
| 02/13/2017 | GN | *Research*<br>research judges individual rules plus strategy | 0.20 at $ 250.00/hr | $ 50.00 |
| 02/13/2017 | GN | *Research*<br>legal research- motion to amend standard | 0.70 at $ 250.00/hr | $ 175.00 |
| 02/14/2017 | GN | *Draft*<br>draft second amended complaint | 0.50 at $ 250.00/hr | $ 125.00 |
| 02/14/2017 | GN | *Draft*<br>continue draft of second amended complaint | 0.60 at $ 250.00/hr | $ 150.00 |
| 02/14/2017 | GN | *Documentation*<br>draft, review, and edit motion to amend | 1.30 at $ 250.00/hr | $ 325.00 |
| 02/14/2017 | GN | *Research*<br>legal research- motor carrier | 1.60 at $ 250.00/hr | $ 400.00 |
| 02/14/2017 | GN | *Phone Call*<br>tel cls | 0.20 at $ 250.00/hr | $ 50.00 |
| 02/14/2017 | GN | *Documentation*<br>revise second amended complaint | 0.20 at $ 250.00/hr | $ 50.00 |
| 02/15/2017 | GN | *Documentation*<br>review/edit second amended complaint and strategy | 1.70 at $ 250.00/hr | $ 425.00 |
| 02/15/2017 | GN | *Documentation*<br>review and edit motion to amend | 0.30 at $ 250.00/hr | $ 75.00 |

Naydenskiy Law Group reserves the right to seek withdrawal from the case if not paid in full within ten (10) days

| Date | | Type | Hours/Rate | Amount |
|---|---|---|---|---|
| 02/15/2017 | GN | *Review* | 0.30 at $ 250.00/hr | $ 75.00 |
| | | review case file, sac | | |
| 02/16/2017 | GN | *Research* | 0.90 at $ 250.00/hr | $ 225.00 |
| | | legal research ups other cases and ca driver case | | |
| 02/19/2017 | GN | *Documentation* | 1.60 at $ 250.00/hr | $ 400.00 |
| | | review and edit opp to def. motion to dismiss | | |
| 02/21/2017 | GN | *Research* | 0.60 at $ 250.00/hr | $ 150.00 |
| | | research def motion to dismiss cited case | | |
| 02/21/2017 | GN | *Review* | 0.50 at $ 250.00/hr | $ 125.00 |
| | | review draft motion opposition | | |
| 02/21/2017 | GN | *Documentation* | 0.90 at $ 250.00/hr | $ 225.00 |
| | | edit motion opposition | | |
| 02/21/2017 | GN | *Documentation* | 4.20 at $ 250.00/hr | $ 1,050.00 |
| | | review and edit motion to dismiss opp | | |
| 02/24/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ witness joe | | |
| 02/27/2017 | GN | *Documentation* | 0.70 at $ 250.00/hr | $ 175.00 |
| | | draft 26a and tel conf. w/ ps re: 26a list of employees | | |
| 02/27/2017 | GN | *Documentation* | 2.10 at $ 250.00/hr | $ 525.00 |
| | | draft/review/and edit doc requests | | |
| 02/27/2017 | GN | *Documentation* | 0.50 at $ 250.00/hr | $ 125.00 |
| | | draft, review, edit Ps' rog requests | | |
| 03/23/2017 | GN | *Review* | 0.20 at $ 250.00/hr | $ 50.00 |
| | | review answer | | |
| 03/23/2017 | AM | *Research* | 0.40 at $ 150.00/hr | $ 60.00 |
| | | UPS bailee status | | |
| 03/28/2017 | GN | *Draft* | 1.00 at $ 250.00/hr | $ 250.00 |
| | | review discovery demands and draft discovery responses | | |
| 03/29/2017 | GN | *Correspondence* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | email def atty re: late discovery | | |
| 03/29/2017 | GN | *Review* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | review Judges Order | | |
| 03/29/2017 | GN | *Correspondence* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | email and tel cond. w/ def atty | | |
| 03/29/2017 | GN | *Review* | 0.30 at $ 250.00/hr | $ 75.00 |
| | | review Def. ltr opp and notes | | |
| 03/30/2017 | GN | *Phone Call* | 0.20 at $ 250.00/hr | $ 50.00 |
| | | tel conf. w/ def atty re: scheduling | | |
| 03/30/2017 | GN | *Correspondence* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | text cls re: deposition dates | | |
| 03/30/2017 | AM | *Draft* | 2.70 at $ 150.00/hr | $ 405.00 |
| | | Initial draft of discovery responses | | |
| 04/06/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ def atty re: 216b scheduling | | |
| 04/06/2017 | GN | *Draft* | 0.20 at $ 250.00/hr | $ 50.00 |
| | | draft ltr to court re: 216b schedule | | |
| 04/07/2017 | GN | *Correspondence* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | text cl re: doc discovery | | |
| 04/07/2017 | GN | *Correspondence* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel and email def. atty re: 216 schedule | | |
| 04/13/2017 | GN | *Review* | 1.10 at $ 250.00/hr | $ 275.00 |
| | | review def doc production | | |
| 04/17/2017 | GN | *Review* | 0.20 at $ 250.00/hr | $ 50.00 |
| | | review draft doc responses | | |
| 04/17/2017 | GN | *Draft* | 1.10 at $ 250.00/hr | $ 275.00 |
| | | draft doc responses | | |
| 04/17/2017 | GN | *Documentation* | 0.50 at $ 250.00/hr | $ 125.00 |
| | | continue draft doc responses for moses | | |
| 04/18/2017 | GN | *Review* | 1.10 at $ 250.00/hr | $ 275.00 |
| | | review def. discovery docs | | |
| 04/18/2017 | GN | *Meeting* | 0.20 at $ 250.00/hr | $ 50.00 |
| | | cl meeting re: discovery and status | | |

Naydenskiy Law Group reserves the right to seek withdrawal from the case if not paid in full within ten (10) days

| Date | | Type | Hours/Rate | Amount |
|------|---|------|------------|--------|
| 04/18/2017 | GN | *Phone Call* | 0.30 at $ 250.00/hr | $ 75.00 |
| | | tel conf. w/ cl moses re: discovery responses | | |
| 04/18/2017 | GN | *Draft* | 0.40 at $ 250.00/hr | $ 100.00 |
| | | draft moses rog responses | | |
| 04/19/2017 | GN | *Draft* | 0.80 at $ 250.00/hr | $ 200.00 |
| | | draft morales rog responses | | |
| 04/19/2017 | GN | *Correspondence* | 0.20 at $ 250.00/hr | $ 50.00 |
| | | text cls re rog questions | | |
| 04/19/2017 | GN | *Draft* | 0.60 at $ 250.00/hr | $ 150.00 |
| | | draft morales doc responses | | |
| 04/19/2017 | GN | *Review* | 0.50 at $ 250.00/hr | $ 125.00 |
| | | review def produced discovery | | |
| 04/19/2017 | GN | *Draft* | 0.40 at $ 250.00/hr | $ 100.00 |
| | | review/edit morales discovery responses | | |
| 04/20/2017 | GN | *Documentation* | 0.90 at $ 250.00/hr | $ 225.00 |
| | | edit, finalize discovery responses | | |
| 04/20/2017 | GN | *Correspondence* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | text cls re: depositions | | |
| 04/25/2017 | GN | *Deposition* | 4.50 at $ 250.00/hr | $ 1,125.00 |
| | | Depo of Plaintiff Morales | | |
| 04/25/2017 | GN | *Travel* | 0.60 at $ 250.00/hr | $ 150.00 |
| | | travel to def. office for Morales depo (1.2 billed at 1/2 time) | | |
| 04/25/2017 | GN | *Travel* | 0.50 at $ 250.00/hr | $ 125.00 |
| | | travel from Morales depo (1.1 billed at 1/2 time) | | |
| 04/26/2017 | GN | *Travel* | 0.50 at $ 250.00/hr | $ 125.00 |
| | | travel to depo of Moses (1.1 hrs billed at 1/2 time) | | |
| 04/26/2017 | GN | *Deposition* | 4.00 at $ 250.00/hr | $ 1,000.00 |
| | | Depo of Plaintiff Moses | | |
| 04/26/2017 | GN | *Travel* | 0.50 at $ 250.00/hr | $ 125.00 |
| | | travel from Moses depo (1hr billed at 1/2 time) | | |
| 05/01/2017 | AM | *Research* | 0.20 at $ 150.00/hr | $ 30.00 |
| | | FRCP Rogs requirements | | |
| 05/02/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ cl re: status | | |
| 05/10/2017 | GN | *Draft* | 0.40 at $ 250.00/hr | $ 100.00 |
| | | draft damages estimate | | |
| 05/10/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ cl re: sett | | |
| 05/10/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ cl re: sett | | |
| 05/12/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ def atty re: sett | | |
| 05/22/2017 | AM | *Draft* | 0.20 at $ 150.00/hr | $ 30.00 |
| | | Adjournment letter to Court | | |
| 06/11/2017 | GN | *Review* | 1.20 at $ 250.00/hr | $ 300.00 |
| | | review sett agreements | | |
| 06/12/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ def atty | | |
| 06/13/2017 | GN | *Phone Call* | 0.20 at $ 250.00/hr | $ 50.00 |
| | | tel conf. w/ cls re: sett agreement | | |
| 06/13/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ cl moses | | |
| 06/13/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ cl albert re: sett agreement | | |
| 06/14/2017 | GN | *Phone Call* | 0.30 at $ 250.00/hr | $ 75.00 |
| | | tel conf. w/ cl moses | | |
| 06/14/2017 | GN | *Phone Call* | 0.10 at $ 250.00/hr | $ 25.00 |
| | | tel conf. w/ def atty re: sett agreement change | | |
| 06/29/2017 | GN | *Phone Call* | 0.20 at $ 250.00/hr | $ 50.00 |
| | | tel. conf. w/ cl moses re: judges 6/15/17 order | | |
| 07/06/2017 | GN | *Phone Call* | 0.20 at $ 250.00/hr | $ 50.00 |
| | | tel conf. w/ def atty re: next week hearing | | |

Naydenskiy Law Group reserves the right to seek withdrawal from the case if not paid in full within ten (10) days

| Date | | Description | | Hours/Rate | Amount |
|---|---|---|---|---|---|
| 07/14/2017 | GN | *Phone Call* | | 0.50 at $ 250.00/hr | $ 125.00 |
| | | tel conf. w/ court | | | |
| 07/25/2017 | GN | *Correspondence* | | 0.10 at $ 250.00/hr | $ 25.00 |
| | | text cls | | | |
| 07/26/2017 | GN | *Draft* | | 0.20 at $ 250.00/hr | $ 50.00 |
| | | start draft of sett approval motion | | | |
| 07/27/2017 | GN | *Draft* | | 0.20 at $ 250.00/hr | $ 50.00 |
| | | draft/review/edit ltr to extend deadline | | | |
| 08/01/2017 | GN | *Phone Call* | | 0.30 at $ 250.00/hr | $ 75.00 |
| | | tel conf. w/ cl moses | | | |
| 08/02/2017 | GN | *Draft* | | 1.20 at $ 250.00/hr | $ 300.00 |
| | | draft fairness motion | | | |
| 08/03/2017 | GN | *Documentation* | | 0.90 at $ 250.00/hr | $ 225.00 |
| | | review and edit fairness ltr | | | |
| 08/08/2017 | GN | *Documentation* | | 0.20 at $ 250.00/hr | $ 50.00 |
| | | edit motion for sett. | | | |

**In Reference To: UPS (Expenses)**

| Date | | Description | Rate | Amount |
|---|---|---|---|---|
| 11/14/2016 | GN | *Printing/Copying* | $1.30 | $ 1.30 |
| | | print draft complaint (13 pgs) | | |
| 11/15/2016 | GN | *Printing/Copying* | $1.20 | $ 1.20 |
| | | print complaint (12 pgs) | | |
| 11/15/2016 | GN | *Filing Fee* | $400.00 | $ 400.00 |
| | | EDNY filing fee | | |
| 11/16/2016 | GN | *Process Service* | $70.00 | $ 70.00 |
| | | process serve dos | | |
| 01/12/2017 | GN | *Printing/Copying* | $3.20 | $ 3.20 |
| | | print amended complaint x2 (32 pages) | | |
| 01/12/2017 | GN | *Printing/Copying* | $1.80 | $ 1.80 |
| | | print amended complaint for service (18 pgs) | | |
| 01/12/2017 | GN | *Mailing/Postage* | $1.09 | $ 1.09 |
| | | postage serve amended complaint | | |
| 02/22/2017 | GN | *Mailing/Postage* | $5.95 | $ 5.95 |
| | | postage- courtesy copy to Court | | |
| 03/01/2017 | GN | *Printing/Copying* | $3.99 | $ 3.99 |
| | | print discovery docs and postage to Def atty | | |
| 03/02/2017 | GN | *Printing/Copying* | $1.90 | $ 1.90 |
| | | print 2nd amended complaint to serve (19 pgs) | | |
| 03/02/2017 | GN | *Mailing/Postage* | $0.67 | $ 0.67 |
| | | postage serve second amended complaint | | |
| 04/12/2017 | GN | *Miscellaneous* | $6.49 | $ 6.49 |
| | | flash drive for Def discovery | | |
| 04/17/2017 | GN | *Printing/Copying* | $1.60 | $ 1.60 |
| | | print moses draft doc responses (16 pgs) | | |
| 04/21/2017 | GN | *Printing/Copying* | $5.00 | $ 5.00 |
| | | print Plaintiff discovery responses (50 pgs) | | |
| 04/21/2017 | GN | *Mailing/Postage* | $1.09 | $ 1.09 |
| | | postage discovery responses | | |

*Total Hours:* 69.40 hrs
*Total Labor:* $ 17,000.00
*Total Expenses:* $ 505.28
**Total Invoice Amount: $ 17,505.28**
**Previous Balance: $ 0.00**
**Balance (Amount Due): $ 17,505.28**

Naydenskiy Law Group reserves the right to seek withdrawal from the case if not paid in full within ten (10) days

Naydenskiy Law Group reserves the right to seek withdrawal from the case if not paid in full within ten (10) days